CASE NO. 13-1585

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

D. MONTGOMERY,

*Plaintiff/Appellant,*

vs.

CITIMORTGAGE, INC., *ET AL.,*

*Defendants/Appellees*

**On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division**

**BRIEF ON APPEAL CITIMORTGAGE, INC.**

Rana Razzaque (P67627)
Trott & Trott, P.C.
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI  48334
(248) 723-5073

# TABLE OF CONTENTS

CORPORATE DISCLOSURE FORM ........................................................... ii

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................... vii

JURISDICTIONAL STATEMENT ................................................ viii

COUNTER STATEMENT OF ISSUES PRESENTED ................................. ix

COUNTER STATEMENT OF THE CASE ..................................... 1

COUNTER STATEMENT OF FACTS ........................................ 2

SUMMARY OF ARGUMENTS .................................................. 6

STANDARD OF REVIEW ....................................................... 7

I:  The Trial Court Did Not Abuse Its Discretion in
    Denying Leave to Amend the Complaint ............................................ 8

II:  The Trial Court Did Not Abuse Its Discretion In
     Denying Reconsideration of the Order Granting
     Motion to Take Video Depositions ..................................... 12

III:  The Trial Court Correctly Dismissed CitiMortgage, Inc. ................. 14

CONCLUSION ..................................................................... 37

CERTIFICATE OF COMPLIANCE ........................................... 38

DESIGNATION OF DOCUMENTS ............................................ 39

CERTIFICATE OF SERVICE ................................................. 40

## CORPORATE DISCLOSURE FORM

Pursuant to 6th Cir. R. 26.1, CitiMortgage, Inc., makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, lit below the identity of the parent corporation or affiliate and the relationship between it and the name party.

**ANSWER: YES**

Defendant CMI is a New York Corporation and is wholly owned by Citibank, N.A., Citibank, N.A., is chartered under the National Bank Act and is wholly owned by Citicorp. Citicorp is a Delaware Corporation and is wholly owned by CitiGroup, Inc. CitiGroup Inc. is a Delaware corporation and its shares are publicly traded.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

**ANSWER: YES**

Defendant CMI is a New York Corporation and is wholly owned by Citibank, N.A., Citibank, N.A., is chartered under the National Bank Act and is wholly owned by Citicorp. Citicorp is a Delaware Corporation and is wholly owned by CitiGroup, Inc. CitiGroup Inc. is a Delaware corporation and its shares are publicly traded.

# TABLE OF AUTHORITIES

**Cases:**

*Alar v Mercy Memorial Hosp.*, 208 Mich App 518, 528;
529 NW2d 318 (1995).................................................................... 27

*Baker v McCollan*, 443 U.S. 137, 144 n. 3 (1979)............................................. 10

*Browning v Levy*, 283 F.3d 761, 776 (6th Cir. 2002)......................................... 29

*Eastman Kodak Co. v Image Technical Servs., Inc.*,
504 U.S. 451, 466 n. 10; 112 S. Ct. 2072; 119 L.Ed.2d 265 (1992)............... 7

*Eberline v Nat'l City Mtg., Inc.*, unpublished opinion per curiam
of the Court of Appeals, issued July 28, 2011 (Docket No. 292022), 2011
Mich App LEXIS 1412 (Mot. SJ, RE 73-11, PG ID # 1917-1921).............. 23

*Eubanks v CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) ............. 29

*Gage Prods. Co., v Henkel Corp.*, 393 F. 3d 629, 637 (6th Cir. 2004) ............... 7

*Hayley v Allstate Ins. Co.*, 262 Mich App 571, 577;
686 NW2d 273 (2004) (internal citations omitted)........................................ 33

*In re Coastal Plains*, 179 F.3d 197 (5th Cir. 1999)............................................. 29

*In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003)................................. 29

*In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529 (6th Cir. 2002)................. 9,13

*In re HNRC Dissolution Co.*, 396 B.R. 461, 465 (B.A.P. 6th Cir. 2008) ... 9,13,14

*Johnson v University of Wisconsin-Eau Claire*, 70 F.3d 469, 481
(7th Cir. 1995) ........................................................................................... 10

*Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003)
(internal citations omitted) ............................................................................ 34

*Martorana v Federal Nat'l Mtg. Assoc.*, Case No.: 11-10312,
      2012 LEXIS 4755 (E.D. Mich. Jan 17, 2012)...........................................24,25

*Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992) ...................27

*Mills v Lapeer County*, 2011 U.S. Dist. LEXIS 16030
      (E.D. Feb. 17, 2011) ..............................................................16,23,24,25

*Montgomery v Huntington Bank*, 346 F.3d 693, 697-698 (6th Cir. 2003)............7

*Mount Elliot Cemetery Ass'n v City of Troy*, 171 F.3d 398 n. 1
      (6th Cir. 1999) ...................................................................................10

*Nelson v Grays*, 209 Mich App 661, 665; 531 NW2d 826 (1995) ..............23,24

*New Hampshire v Maine*, 532 U.S. 742, 749; 121 S. Ct. 1808,
      149 L. Ed. 2d 968 (2001) ....................................................................29

*Riddle v Chase Home Fin.*, 2010 U.S. Dist. LEXIS 91247
      (E.D. Mich. Sept. 2, 2010) ...................................................................30

*RMS Residential Properties, LLC v Naaze*, 903 N.Y.S.2d 729, 733-734
      (N.Y. Dist. Ct., 2010) ....................................................................11,12

*Robinson v Jones*, 142 F.3d 905, 906 (6th Cir. 1998).......................................9,13

*Shaw v Hoffman*, 25 Mich 162, 169 (1872) .....................................................17

*Street v J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).............................32

*U.S. Bank Nat. Ass'n v Hurtado*, 27 Misc. 3d 933, 899 N.Y.S.2d 806
      (Nassau Dist. Ct. 2010) ......................................................................12

*Waldshmidt v Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988)........31

*White v Wyndham Vacation Ownership, Inc.*, 617 F.3d 472,
      2010 U.S. App. LEXIS 16988 (6th Cir. 2010)........................................30

*Ziegler v Aukerman*, 512 F. 3d 777, 786 (2008) .................................................7

## Federal Statutes:

11 U.S.C. § 521(1)................................................................................28

12 U.S.C. §1452(f).............................................................................viii

14 U.S.C. § 1985................................................................................11

18 U.S.C. § 594.................................................................................8,9

18 U.S.C. § 595.................................................................................8,9

18 U.S.C. § 600................................................................................8,11

28 U.S.C. §1290................................................................................viii

42 U.S.C. § 1983...............................................................................8,9

42 U.S.C. §1986...............................................................................8,11

42 U.S.C. § 1987..............................................................................8,11

42 U.S.C. §1990...............................................................................11

## Federal Rules:

Fed. R. Civ. P. 12(c)...........................................................................14

Fed. R. Civ. P. 56(c)...........................................................................14

## State Statutes:

MCL § 339.2412................................................................................37

MCL § 445.901 *et seq* .......................................................................34

MCL § 445.902..............................................................................34,35

MCL § 445.911................................................................................34

MCL § 445.922 ................................................................. 34

MCL § 570.1114 ............................................................... 36

MCL § 570.1118 ............................................................... 36

MCL § 600.2918 ......................................................... 15,32

MCL § 600.2918(1) ........................................................... 16

MCL § 600.2918(2) ........................................................... 23

MCL § 600.2920 ............................................................... 25

MCL § 600.2935 ............................................................... 36

MCL § 600.3236 ............................................................... 36

**Other Authorities:**

Michigan Penal Code §750.11a.................................... 35,36

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellee wishes to participate in any oral argument scheduled by this Court.

## <u>JURISDICTIONAL STATEMENT</u>

Appellee agrees that the District Court had jurisdiction pursuant to 12 U.S.C. § 1452(f) and this Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291. The Appellee further agrees that the Notice of Appeal was timely filed.

## COUNTER STATEMENT OF ISSUES

I.    The District Court properly denied Montgomery's Motion to Amend Complaint as the proposed amendments were futile.

| | |
|---|---|
| Appellant Answers: | No |
| Appellee Answers: | Yes |
| The District Court Answer: | Yes |
| This Court should Answer: | Yes |

II.   The District Court properly denied Montgomery's Motion for Reconsideration as to the Motion to Take Video Conference of Non-Party Witness, Ninevah Rudolph as Montgomery did not offer the Court any justification to reconsider its Order Granting the Motion to Take Video Conference Deposition of Non-Party Witness, Ninevah Rudolph

| | |
|---|---|
| Appellant Answers: | No |
| Appellee Answers: | Yes |
| The District Court Answers: | Yes |
| This Court should Answer: | Yes |

III.  The District Court properly dismissed the Complaint as to CMI after a review of the record, including Montgomery's objections thereto.

| | |
|---|---|
| Appellant Answers: | No |
| Appellee Answers: | Yes |
| The District Court Answers: | Yes |
| This Court should Answer: | Yes |

## COUNTER-STATEMENT OF THE CASE

This action arises out of a Complaint filed by Plaintiff, Duane Montgomery ("Montgomery"). Montgomery claims that he was residing as a tenant at 24261 Evergreen Road, Southfield, MI 48075 ("Subject Property") and that Defendants wrongfully evicted him, unlawfully converted his property and intentionally caused him emotional distress. Montgomery's claim arise from his allegations that Defendants' allegedly entered the Subject Property, replaced the locks, and removed his personal property, valued at over $6,000,000.00.

Discovery was conducted in the lower court wherein Montgomery failed to produce any evidence at all that he was a tenant of the Subject Property. After discovery was completed, Defendants Federal Home Loan Mortgage Corporation, CitiMortgage, Inc., and GTJ Consulting, LLC filed motions to dismiss and/or for summary judgment. At the hearing on the motions, the magistrate judge gave Montgomery another opportunity to submit any documents in his possession to demonstrate he was a tenant of the Subject Property during the alleged acts or occurrences. Montgomery submitted some documents which the magistrate judge reviewed and took into consideration in issuing his Report and Recommendation.

Ultimately, the magistrate judge entered a Report and Recommendation recommending the motions to dismiss and/or for summary judgment be granted and Montgomery's lawsuit be dismissed with prejudice. Montgomery filed

1

Objections to the Report and Recommendation. The Federal District Court issued an Order Accepting the Report and Recommendation after a review of the record and pleadings, including the Report and Recommendation and the Objections thereto.

## COUNTER-STATEMENT OF FACTS

On June 24, 2002, Ninevah Rudolph gave a mortgage in the amount of $114,000.00 to Mortgage 1, Incorporated to encumber real property commonly known as 24261 Evergreen Road, Southfield, MI 48075 ("Subject Property") (Mot. SJ, RE 73-2, PG ID # 1799-1820). The Mortgage was assigned to ABN AMRO Mortgage Group, Inc on June 28, 2002 (Mot. SJ, RE 73-3, PG ID # 1822). CitiMortgage, Inc., is the successor by merger to ABN AMRO Mortgage Group, Inc ("CMI") (Mot. SJ, RE 73-6, PG ID # 1838-1842). Rudolph defaulted under the terms and conditions of the Mortgage by failing to make the required payments in full and in a timely manner. The loan was referred to the law firm of Trott & Trott, P.C. in October, 2009 to commence foreclosure proceedings as a result of the default. The foreclosure proceedings resulted in a sheriff's sale on January 5, 2010 (Mot. SJ, RE 73-4, PG ID # 1824-1831). Freddie Mac was the successful purchaser at sale (Mot. SJ, RE 73-4, PG ID # 1824-1831). Redemption was not made and the redemption period expired on July 5, 2010.

On approximately March 26, 2010, Plaintiff in this action, Duane Montgomery, an alleged tenant of the Subject Property, filed a Complaint in the Oakland County Circuit Court (Complaint RE 1-2 PG ID # 18-59). The Complaint was removed to the lower court on April 28, 2010 (Removal, RE 1, PG ID # 1-4).   The Complaint initially involved two (2) separate properties: 1) 24261 Evergreen Road, Southfield, MI ("Subject Property"), and 2) 6576 Stonebridge E., West Bloomfield, MI.

The Complaint sought to foreclose construction liens filed and recorded by Montgomery against both 24261 Evergreen Road, Southfield and 6576 Stonebridge E., West Bloomfield.  CMI never had an interest in 6576 Stonebridge E., West Bloomfield.  Additionally, the Complaint alleged that Montgomery was a tenant of the Subject Property and that in March, 2010, CMI and the other named Defendants, allegedly evicted him and allegedly removed his personal property while he was on a "personal business" trip.  He also claimed that his car was towed while on the personal business trip (the alleged eviction, removal of personal property and towing of the car will hereinafter be referred to as the "Alleged Occurrences").   Montgomery claims to have discovered the Alleged Occurrences when he returned from his personal business trip on March 12, 2010 and he filed a police report with the Southfield Police Department on the same day.  The Complaint sought relief under a number of statutes, including the Michigan

3

Consumer Protection Act, and the Michigan Penal Code. Montgomery also sought to recover damages for emotional distress he alleges was caused by the Alleged Occurrences.

Montgomery then filed a Motion to Amend Complaint, which sought to add a number of additional defendants, and which also sought to add additional claims against the original defendants (Mot. Amend., RE 27, PG ID # 588-627). The Motion to Amend Complaint was denied (Order Deny Mot. Amend., RE 50, PG ID # 1239-1256). CMI, along with Freddie Mac and GTJ Consulting, LLC, filed a Motion to Take Video Conference Deposition of Non-Party Witness, Ninevah Rudolph (Mot. Video Dep., RE 53, PG ID # 1259-1323). Montgomery did not respond to the Motion and the Motion to Take Video Conference Deposition of Non-Party Witness, Ninevah Rudolph was granted (Order Grant. Video Dep., RE 57, PG ID # 1339). Montgomery filed a Motion for Reconsideration as to the Order Granting the Motion to Take Video Conference Deposition of Non-Party Witness Ninevah Rudolph (Mot. Recon. Video Dep., RE 58, PG ID # 1340-1345). The Motion for Reconsideration as to the Order Granting the Motion to Take Video Conference Deposition of Non-Party Witness Ninevah Rudolph was denied (Order Deny. Mot. Recon. Video Dep., RE 67, PG ID # 1376-1377).

CMI, along with Freddie Mac, filed a Motion to Dismiss or Motion to Compel Discovery in the Alternative (Mot. Dismiss, RE 69, PG ID # 1381-1413). CMI,

4

along with Freddie Mac, filed a Motion to Strike Certain of Plaintiff's Witnesses

(Mot. Strike, RE 71, PG ID # 1571-1579), (followed by an Errata Statement

Relating to the Motion) (Errata, RE 79, PG ID # 2146-2147).  CMI filed a Motion

to Dismiss and for Summary Judgment (Mot. SJ, RE 73, PG ID # 1767-1796).  A

Report and Recommendation to Grant Defendants' Motions to Dismiss and/or

for Summary Judgment (Dkts. 72, 73 & 75) was issued recommending CMI's Motion

to Dismiss and for Summary Judgment be granted (Order Grant. Mot. SJ, RE 113,

PG ID # 2516-2532).  Montgomery filed Objections to the Report and

Recommendation (Object. R&R, RE 114, PG ID # 2533-2591).  An Order

adopting the Report and Recommendation was entered (Order Adopt. R&R, RE

117, PG ID # 2616-2621).

Montgomery filed the instant appeal, claiming numerous errors as to the

dispositive motions and appealing the following orders.  The orders being

appealed, as listed in the Notice of Appeal filed by Montgomery, and as they

pertain to CMI are as follows: 1) Order Denying Motion to Amend Complaint, RE

50, PG ID # 1239-1256; 2) Order Denying Motion for Reconsideration as to the

Order Granting the Motion to Take Video Conference Deposition of Non-Party

Witness Ninevah Rudolph, RE 67, PG ID # 1376-1377; 3) Order Adopting Report

and Recommendation as to CMI's Motion to Dismiss and for Summary Judgment, RE 117, PG ID # 2616-2621.[1] (Notice of Appeal RE 132, PG ID # 2651-2652).

## SUMMARY OF ARGUMENT

The trial court denied the Motion to Amend Complaint on the grounds that the proposed amendments were futile, and in fact stated the proposed amendment was brought in bad faith, "having little coherence or bearing on the essential subject-matter of this litigation."

The trial court denied the Motion for Reconsideration as to the Motion to Take Video Conference Deposition of Non-Party Witness, Ninevah Rudolph because Montgomery did not offer the Court any justification for the Court to reconsider its Order Granting the Motion to Take Video Conference Deposition of Non-Party Witness, Ninevah Rudolph.

The trial court dismissed the Complaint as to CMI after reviewing the objections because Montgomery failed to point to any arguments or evidence that, in Montgomery's opinion, were not addressed by the Magistrate Judge. The trial

---

[1] Montgomery's Brief on Appeal lists additional orders not listed in the Notice of Appeal that he claims he is appealing, for example, the Order granting 100 Motion to Extend RE 108, and the Order denying 84 Plaintiff's Motion to Exclude Transcript RE # 110, however, these orders are not listed in Montgomery's Notice of Appeal, RE # 132. Additionally, the Brief on Appeal does not list orders that were initially contained in Montgomery's Notice of Appeal, for example, the Order Denying Motion for Reconsideration.

court further found that the Magistrate Judge correctly concluded that: 1) Montgomery failed to produce any credible evidence to support a finding that his personal property was removed from the home; 2) Montgomery had failed to allege that the Defendants had used or threatened force during the alleged eviction; 3) Montgomery failed to establish that he was a tenant; and 4) judicial estoppel barred Montgomery's conversion claim.

Montgomery does not present this Court with any grounds upon which to reverse the findings of the trial court as to any of the appealed orders.

## **STANDARD OF REVIEW**

The Appellant's brief on appeal contains an incomplete Standard of Review. A circuit court of appeals reviews a decision of a district court to deny a motion for leave to amend a complaint under an abuse of discretion standard of review. *Ziegler v Aukerman*, 512 F. 3d 777, 786 (2008).

Generally, the denial of a motion to reconsider is reviewed for an abuse of discretion. *Gage Prods. Co., v Henkel Corp.*, 393 F. 3d 629, 637 (6th Cir. 2004).

An appellate court reviews de novo a district court's grant of a motion to dismiss. *Montgomery v Huntington Bank*, 346 F.3d 693, 697-698 (6th Cir. 2003).

An appellate court reviews summary judgment de novo. *Eastman Kodak Co. v Image Technical Servs., Inc.*, 504 U.S. 451, 466 n. 10; 112 S. Ct. 2072; 119 L.Ed.2d 265 (1992).

7

## ARGUMENT ONE—THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND THE COMPLAINT

Montgomery filed a motion for leave to amend his Complaint to add the law firm that conducted the foreclosure sale of the Subject Property, Trott & Trott, P.C., and individual members of that firm. Montgomery also sought to add the former White House Chief of Staff Rahm Emanuel, and Deputy Chief of Staff to President Barack H. Obama, Jim Messina. Additionally, the amendment sought to add additional claims against CMI including violations of: 42 U.S.C. § 1983; 18 U.S.C. § 594; 18 U.S.C. § 595; 42 U.S.C. § 1986; 42 U.S.C. § 1987; 18 U.S.C. § 600; and The Protecting Tenants at Foreclosure Act of 2009 (Mot. Amend. RE 27, PG ID # 588-627). CMI filed a response to the Motion for Leave to Amend which argued that each proposed amendment was futile (CMI Resp. Mot. Amend. RE 32 PG ID # 754-772). After examining the record, the lower court concluded that the motion to amend must be denied (Order Deny Mot. Amend. RE 50, PG ID # 1253). The lower court further found that "Montgomery has brought this proposed amendment in bad faith, inasmuch as the newly-pled claims have little coherence or bearing on the essential subject-matter of this litigation." (Order Deny Mot. Amend. RE 50, PG ID # 1253). The Order lists specific reasons for the lower court's finding of the bad faith (Order Deny Mot. Amend. RE 50, PG ID # 1253-

8

1254).  Montgomery's claim of appeal lists the Order Denying Motion to Amend

Complaint, RE 50, PG ID # 1239-1256, however, the Order is not addressed in his

brief on appeal except to state that the trial court abused its discretion in denying

Montgomery's motion (Appellant's Br. p. 4, 16).

Montgomery has forfeited the appeal of the Order Denying the Motion to

Amend.  He has not briefed his claims on appeal in regards to this Order, and has

thus abandoned it.  See *Robinson v Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

If this Court finds that Montgomery has not abandoned this issue on appeal,

then the appeal of this Order should be affirmed because the lower court was

correct in all aspects and did not abuse its discretion is denying the amendment.

Abuse of discretion is defined as a definite and firm conviction that the court

below committed a clear error of judgment.  *In re Eagle-Picher Indus., Inc.*, 285

F.3d 522, 529 (6th Cir. 2002).  An abuse of discretion occurs only when the trial

court relies upon clearly erroneous findings of fact or when it improperly applies

the law or uses an erroneous legal standard.  *In re HNRC Dissolution Co.*, 396 B.R.

461, 465 (B.A.P. 6th Cir. 2008).

As previously indicated, CMI argued to the lower court that the proposed

amendment was futile in its entirety.  The proposed amendment to include a claim

for a violation of 42 U.S.C. § 1983 was futile for the reason that 1983 is not a

source of substantive rights, but a method of vindicating federal rights elsewhere

9

conferred by those parts of the United States Constitution and federal statutes that
it describes. *Baker v McCollan*, 443 U.S. 137, 144 n. 3 (1979); *Mount Elliot
Cemetery Ass'n v City of Troy*, 171 F.3d 398 n. 1 (6th Cir. 1999). A Section 1983
claim must specifically allege a violation of the United States Constitution or laws
of the United States. *Id.*; *see also Johnson v University of Wisconsin-Eau Claire*,
70 F.3d 469, 481 (7th Cir. 1995). Montgomery did not provide the trial court with
any reason as to why he was entitled to relief under Section 1983 and he did not
allege any violation of the Constitution or any other law of the United States. As
such, the trial court correctly denied the proposed amendment.

The proposed amendment to include a claim for a violation of 18 U.S.C. § 594,
which involves threats or intimidation to voters when interfering with their right to
vote, was also properly denied. This case had nothing to do with alleged voter
inference and Montgomery failed to show otherwise. As such, the denial was
proper and should be affirmed.

The lower court also properly denied Montgomery's proposed claim under 18
U.S.C. § 595, which is a statute that imposes sanctions for certain individuals who
interfere with or affect "the nomination or the election of any candidate for the
office of President, Vice President, Presidential elector, Member of the Senate,
Member of the House of Representatives, Delegate from the District of Columbia,
or Resident Commissioner." *Id.* Montgomery did not provide the lower court with

any basis for bringing this claim against CMI and the lower court properly denied his request for leave to amend.

Montgomery also sought to include a claim for a violation of 42 U.S.C. § 1986 against CMI, which is a statute that deals with the Public Health and Welfare and makes it a criminal violation for two or more persons to conspire to violate one's civil rights under 14 U.S.C. § 1985. Montgomery did not state a cause of action relative to any alleged civil rights violation, nor did he establish that an alleged conspiracy took place in order to violate his civil rights. The proposed amendment was properly denied and should be affirmed.

Likewise, Montgomery did not provide a basis for his proposed claims under 42 U.S.C. § 1987, which authorizes certain individuals to institute proceedings against others in accordance with 42 U.S.C. § 1990 (dealing with the issuance of warrants), or the proposed claim under 18 U.S.C.§ 600, which deals with a promise for employment for a position made possible by an act of Congress. The statutes relied upon by Montgomery simply have nothing to do with this action.

Lastly, the trial court correctly denied a proposed amendment to include a claim for a violation of The Protecting Tenants at Foreclosure Act of 2009 ("PTFA"). Other courts have held that in order to state a viable cause of action under the PTFA, a plaintiff must allege that he is a bona fide tenant and come forward with a valid lease agreement. *RMS Residential Properties, LLC v Naaze*, 903 N.Y.S.2d

729, 733-734 (N.Y. Dist. Ct., 2010), *citing* U.S. Bank Nat. Ass'n v Hurtado, 27

Misc. 3d 933, 899 N.Y.S.2d 806 (Nassau Dist. Ct. 2010). Moreover, the lease

agreement has to be executed prior to a notice of pendency of foreclosure

proceedings in order for it to be valid. *Id.* Montgomery did not provide the lower

court with any lease agreement at all. The lower court was correct in refusing to

allow Montgomery to amend his Complaint to include this claim and Montgomery

has failed to show that said refusal was an abuse of discretion. The lower court's

order should be affirmed.

## ARGUMENT TWO—THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING RECONSIDERATION OF THE ORDER GRANTING MOTION TO TAKE VIDEO DEPOSITIONS

CMI, together with Freddie Mac and GTJ Consulting, filed a motion in the

lower court to take the video deposition of Ninevah Rudolph, who, upon

information and belief, was residing in Arizona during the litigation in the lower

court (Mot. Video Dep., RE 53, PG ID # 1259-1323). Montgomery did not

respond to the motion and an order was entered granting the motion (Order Grant.

Video Dep., RE 57, PG ID # 1339). Montgomery filed a Motion for

Reconsideration as to the Order Granting the Motion to Take Video Conference

Deposition of Non-Party Witness Ninevah Rudolph (Mot. Recon. Video Dep., RE

58, PG ID # 1340-1345). The Motion for Reconsideration as to the Order Granting

the Motion to Take Video Conference Deposition of Non-Party Witness Ninevah

12

Rudolph was denied (Order Deny. Mot. Recon. Video Dep., RE 67, PG ID # 1376-1377). The lower court found that Montgomery did not offer any justification for the court to reconsider its previous order (Order Deny. Mot. Recon. Video Dep., RE 67, PG ID #1376).

Montgomery's claim of appeal lists the Order Denying Motion for Reconsideration as to the Order Granting the Motion to Take Video Conference Deposition of Non-Party Witness Ninevah Rudolph, RE 67, PG ID # 1376-1377 (Notice of Appeal RE 132, PG ID # 2651-2652); however, the Order is not addressed in his brief on appeal at all.

Montgomery has forfeited the appeal of the Order Denying the Motion to Amend. He has not briefed his claims on appeal in regards to this Order, and has thus abandoned it. See *Robinson v Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

If this Court finds that Montgomery has not abandoned this issue on appeal, then the appeal of this Order should be affirmed because the lower court was correct in all aspects and did not abuse its discretion is allowing the video deposition of Ninevah Rudolph. Abuse of discretion is defined as a definite and firm conviction that the court below committed a clear error of judgment. *In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529 (6th Cir. 2002). An abuse of discretion occurs only when the trial court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard. *In*

13

*re HNRC Dissolution Co.*, 396 B.R. 461, 465 (B.A.P. 6th Cir. 2008). Ninevah

Rudolph was the alleged "landlord" of Montgomery and resided out of state during

the litigation in the lower court. A request to take her deposition via video

conferencing was a logical request and the lower court did not abuse its discretion

in allowing the request.[2] Montgomery has failed to show otherwise and the lower

court's decision should be affirmed.

## ARGUMENT THREE—THE TRIAL COURT CORRECTLY DISMISSED CITIMORTGAGE, INC

After the conclusion of discovery in the lower court, CMI filed a Motion to

Dismiss pursuant to Fed. R. Civ. P. 12(c) and for Summary Judgment pursuant to

Fed. R. Civ. P. 56(c) (Mot. SJ, RE 73, PG ID # 1767-1796). After a review of the

record, including Objections filed to the Report and Recommendation, the trial

court adopted the Report in its entirety, finding that the Magistrate Judge correctly

concluded that: 1) Montgomery failed to produce any credible evidence to support

a finding that his personal property was removed from the home; 2) Montgomery

had failed to allege that the Defendants had used or threatened force during the

alleged eviction; 3) Montgomery failed to establish that he was a tenant; and 4)

_____

[2] Ms. Rudolph chose not to appear at the video conference deposition, despite
being personally served in Arizona with the subpoena requiring same.

judicial estoppel barred Montgomery's conversion claim (Order Adopt. R&R, RE 117, PG ID # 2616-2621).

Montgomery claims CMI violated MCL §600.2918, Michigan's anti-lockout statute, and requests treble damages and an award for emotional distress based upon the statute  (Complaint RE 1-2, PG ID # 18-59). MCL §600.2918 provides:

> (1) Any person who is ejected or put out of any lands or **tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force**, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.
>
> (2) **Any tenant** in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater, for each occurrence and, where possession has been post, to recover possession.  Unlawful interference with a possessory interest shall include:
>
> (a) The use of force or threat of force.
>
> (b) The removal, retention, or destruction of personal property of the possessor.
>
> (c) A change, alteration, or addition to the locks or other security devices on the property without forthwith providing keys or other unlocking devices to the person in possession.
>
> (d) The boarding of the premises which prevents or deters entry.
>
> (e) The removal of doors, windows, or locks.
>
> (f) Causing, by actions or omission, the termination or interruption of a service procured by the tenant or which the landlord is under an existing duty to furnish, which service is so essential that its termination or interruption would constitute constructive eviction, including heat, running water, hot water, electric, or gas service.
>
> (g) Introduction of noise, odor or other nuisance.

15

(3) The provisions of subsection (2) shall not apply where the owner, lessor, licensor, or their agents can establish that he:

(a) Acted pursuant to court order or

(b) Interfered temporarily with possession only as necessary to make needed repairs or inspection and only as provided by law or

(c) Believed in good faith the tenant had abandoned the premises, and after diligent inquiry had reason to believe the tenant does not intend to return, and current rent is not paid.

(4) A person who has lost possession or whose possessory interest has been unlawfully interfered with may, if that person does not peacefully regain possession, bring an action for possession pursuant to section 6714(1)(d) of this act or bring a claim for injunctive relief in the appropriate circuit court. A claim for damages pursuant to this section may be joined with the claims for possession and for injunctive relief or may be brought in a separate action.

(5) The provisions of this section may not be waived.

(6) An action to regain possession of the premises under this section shall be commenced within 90 days from the time the cause of action arises or becomes known to the plaintiff. An action for damages under this section shall be commenced within 1 year from the time the cause of action arises or becomes known to the plaintiff. (Emphasis Added).

In order for MCL §600.2918(1) to apply, the self-help must be forcible to give rise to treble damages. *Mills v Lapeer County*, 2011 U.S. Dist. LEXIS 16030 (E.D. Feb. 17, 2011). As noted by the *Mills* court, in a case construing nearly identical language, the Michigan Supreme Court stated:

[T]he entry or detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out; in other words, the force contemplated by the statute is not merely the force used against, or upon the property, but force

16

used or threatened against **persons** as a means, or for the purpose of expelling or keeping out the prior possessor.   *Shaw v Hoffman*, 25 Mich 162, 169 (1872) (Emphasis Added).

In this case, Montgomery states that he left the Subject Property on Sunday, March 7, 2010 and did not return until Friday, March 12, 2010.  (Complaint RE 1-2, PG ID # 30)  He further states that the Alleged Occurrences occurred on Monday, March 8, 2010.  (Complaint RE 1-2, PG ID # 30).  There are no allegations in the Complaint that Montgomery was physically present during the Alleged Occurrences.  There is no allegation that CMI, or any of the Defendants, used force or threat of force during the alleged eviction to physically remove Plaintiff from the Subject Property or to bar Montgomery's reentry to the Subject Property.  In fact, since Montgomery was on a "personal business" trip and was not present at the Subject Property on March 8, 2010, it would have been impossible for there to be any physical interaction between Montgomery and CMI or any of the other Defendants.  Also, the allegations contained in the Complaint show that Montgomery was provided a lockbox code and was provided access on the same day he discovered the changed locks, March 12, 2010 (Complaint RE 1-2, PG ID # 30-31).  Therefore, he was not kept out of the Subject Property, by force, or otherwise.  Thus, Montgomery failed to state a valid cause of action under subsection (1) of Michigan's anti-lockout statute.

17

Regarding subsection (2) of Michigan's anti-lockout statute, Montgomery failed to show any facts or evidence at all that CMI was involved regarding the Alleged Occurrences. Montgomery's Complaint failed to show this because CMI was not in any way involved with the Alleged Occurrences (Mot. SJ, RE 73-5, PG ID # 1833-1836). As explained above, CMI is the successor by merger to ABN AMRO Mortgage Group, Inc., the original mortgagee of the Mortgage that encumbered the Subject Property (Mot. SJ, RE 73-6, PG ID # 1838-1842). CMI also serviced the loan on behalf of the investor, Freddie Mac (Mot. SJ, RE 73-5, PG ID # 1833-1836). As servicer, CMI had an independent contractor conduct routine exterior inspections of the Subject Property, Safeguard Properties (Mot. SJ, RE 73-5, PG ID # 1833-1836; Mot. SJ, RE 73-7, PG ID # 18441846). Exterior inspections were conducted at approximately the time of the Alleged Occurrences, one on February 17, 2010 and another on March 19, 2010 (Mot. SJ, RE 73-8, PG ID # 1848-1855). The inspections indicated that the Subject Property was occupied and a card was left advising the mortgagor to contact CMI (Mot. SJ, RE 73-8, PG ID # 1848-1855). The inspection reports have columns to indicate the property status, including categories for "interior cleared," "eviction," "padlock installed," "lockbox installed," "winterized," "locked by Safeguard," and "removed personals." On each report, "N/A" is reported (Mot. SJ, RE 73-8, PG ID # 1848-1855). That is because neither CMI, nor its agents, or independent contractors

18

entered or removed any personal property from the Subject Property. CMI did not winterize the Subject Property, did not change the locks and did not install a padlock or lockbox. CMI did not order or authorize anyone to tow any vehicles from the Subject Property (Mot. SJ, RE 73-5, PG ID # 1833-1836).

Montgomery failed to show the lower court even a scintilla of evidence which tended to show that CMI was involved in any of the allegations contained in the Complaint. Rather, Montgomery merely relied on his bare allegations that CMI is liable to Montgomery (Complaint RE 1-2, PG ID # 19), and that CMI "conspired" with the other Defendants to "force" Plaintiff from the Subject Property (Complaint RE 1-2, PG ID # 30). These bare conclusions, with no facts in support, are insufficient to survive a motion to dismiss.

Further, Montgomery has not provided any evidence outside of the allegations in the Complaint which tends to show that CMI was in any way involved with the Alleged Occurrences. Montgomery did not provide Rule 26 initial disclosures, so there was no evidence provided in disclosures that CMI was in any way involved. Montgomery was specifically asked how and why he believed CMI to be involved with the eviction and he stated: "the home invasion was caused by Freddie Mac, CitiMortgage & GTJ. Citi left a note in the unit. And Citi called me 1 month before the Home Invasion." (Mot. SJ, RE 73-9, PG ID # 1878). When asked for documents showing CMI's involvement, Montgomery responded: "I do not

19

understand what "re-key" is. I will provide doc that show Citi was involved in the Home Invasion." (Mot. SJ, RE 73-9, PG ID # 1885).

As indicated above, routine exterior inspections were conducted, during which times cards were left on the outside of the Subject Property asking that CMI be contacted. CMI never left any "note" inside the Subject Property and never had access to the interior of the Subject Property (Mot. SJ, RE 73-5, PG ID # 1833-1836). Montgomery's discovery responses do nothing more than reiterate his unfounded belief that CMI was involved with the alleged occurrences, but still does not show any facts or evidence in support of his belief. This is because Montgomery cannot show any facts or evidence in support of his allegations as CMI was simply not involved in any way with the Alleged Occurrences. CMI never requested any entity enter the Subject Property, never authorized the removal of any personal belongings and never contacted Ross Towing to tow what Montgomery claims to be his vehicle (Mot. SJ, RE 73-5, PG ID # 1833-1836). In fact, Exhibit H, attached to Plaintiff's Complaint, shows the vehicle in question was owned by "Helen J. Smith," whose address was 300 River Front Dr., Detroit, MI 48226, and the towing was requested by "Southfield PPI-Lot" (Complaint RE 1-2, PG ID # 59). Nothing in this document tends to show that CMI was at all involved with the towing of the vehicle. Therefore, any and all claims that CMI

20

violated Michigan's Anti-Lockout Statute were properly dismissed by the lower court and should be affirmed.

Regarding subsection (2) of Michigan's Anti-Lockout Statute, Montgomery failed to state a claim under that section, as he was not a tenant under the statute. In this case, Montgomery claims he was "the tenant whom is in possession of the property 24261 Evergreen Road, Southfield, MI…" (Complaint RE 1-2, PG ID # 26). Montgomery further states he began renting the property on or about May, 2009, and that he had made an agreement with "the landlord" to perform emergency repairs to the property (Complaint RE 1-2, PG ID # 29). There are no allegations contained in the Complaint identifying who "the landlord" is. When asked to provide any and all agreements, including lease agreements with Ninevah Rudolph, Montgomery responded, "Ok, I will provide." (Mot. SJ, RE 73-9, PG ID # 1882). Montgomery never provided any agreements or lease agreements between himself and Ninevah Rudolph. When asked for copies of rent payments to Ninevah Rudolph, Montgomery responded, "Ok, I will provide." (Mot. SJ, RE 73-9, PG ID 1883). Montgomery never provided copies of any rent payments to Rudolph or anyone else. Likewise, Montgomery failed to provide any copies of homeowner's or renter's insurance policies, never provided copies of condominium association payments, never provided any copies of utility bills during discovery, and never provided a copy of his driver's license that was in

21

effect in March, 2010 (Mot. SJ, RE 73-9, PG ID 1883-1885). In sum, Montgomery never provided even a scintilla of evidence that he was occupying the Subject Property, let alone had a written lease with Rudolph and/or was paying rent or other consideration to Rudolph for occupying the Subject Property.

Moreover, in a deposition that occurred on April 5, 2011, Montgomery testified under oath that his address was 2245 South Edsel, in Detroit (Mot. SJ, RE 73-10, PG ID # 1896). Montgomery further testified that he had lived at that address for "at *least* five years." (Mot. SJ, RE 73-10, PG ID # 1896). (Emphasis Added). When asked if he resided at the Subject Property, Montgomery stated "I *may* have on occasion" but could not recall the last time he resided there (Mot. SJ, RE 73-10, PG ID # 1897) (Emphasis Added). This testimony, taken under oath, revealed that Montgomery had been living at 2245 South Edsel, in Detroit, during the alleged occurrences in March, 2010. This information, coupled with the fact that Montgomery never provided any evidence that he was occupying the Subject Property, through a lease or otherwise, makes it clear that Montgomery failed to show that he was a "tenant" within the meaning of the Anti-Lockout Statute.

Regardless of Montgomery's alleged relationship, or lack thereof, with the former mortgagor, Ninevah Rudolph, what is also abundantly clear is that Montgomery had no relationship whatsoever with CMI. The Michigan Court of Appeals has held that only a tenant, as defined by Michigan law, may bring a claim

22

under MCL 600.2918(2). *Eberline v Nat'l City Mtg., Inc.*, unpublished opinion per curiam of the Court of Appeals, issued July 28, 2011 (Docket No. 292022), 2011 Mich App LEXIS 1412 (Mot. SJ, RE 73-11, PG ID # 1917-1921). The *Eberline* panel determined that a tenant "is the individual or individuals who pay consideration to the landlord for the right to occupy rental property' as opposed to 'the members of the larger family unit dwelling in the rental property.'" *Id.* at p. 10, quoting *Nelson v Grays*, 209 Mich App 661, 665; 531 NW2d 826 (1995). The *Eberline* panel found that "mere possession of premises, then, does not establish a landlord-tenant relationship with the owner of those premises." *Id.* Additionally, the *Eberline* court examined the relationship between Plaintiff, Eberline and Defendant, National City Mortgage, when determining whether a landlord tenant relationship existed as between those two entities. *Id.* at p. 9-10. Therefore, even if Montgomery had established a landlord tenant relationship with Rudolph, that is insufficient for purposes of the Anti-Lockout Statute. There is no relationship, landlord-tenant or otherwise, between Montgomery and CMI. Therefore, Montgomery's claims against CMI under the Anti-Lockout Statute were properly dismissed and should be affirmed.

Following this same rationale, the United States District Court for the Eastern District of Michigan has also refused to sustain a claim under MCL 600.2918(2) by someone other than a tenant as defined by Michigan law. *Mills v County of*

23

*Lapeer*, No. 09-14026, 2011 LEXIS 16030 (E.D. Mich. Feb 17, 2011) (Mot. SJ, RE 73-12, PG ID # 1923-1947). In the *Mills* case, the plaintiffs were land contract vendees, and neither the Mills, nor their land contract vendor, paid the taxes on the property in question. A tax-foreclosure sale was held with the County of Lapeer being the successful purchasers. The County and/or its agents allegedly entered the property and removed belongings without a court order. *Id.* at p. 6. The *Mills* court found that the plaintiffs were not tenants under MCL 600.2918(2) and that their claims failed as a matter of law. *Id.* at p. 17. In reaching this conclusion, the *Mills* court specifically examined the relationship between the plaintiffs, Mills, and the defendant, County of Lapeer and found that ultimately, the Mills were not tenants but were trespassers. *Id.* at p. 17-35. The *Mills* court emphasized that "under *Nelson* it is plain that 'tenant' cannot be read out of the anti-lockout statute. It is equally clear that the term cannot be read to include all persons—in *Nelson* the court even excluded *lawful* occupants of the property." *Id.* at p. 31. (Emphasis in Original).

The *Mills* case has been recently cited with approval in the case of *Martorana v Federal Nat'l Mtg. Assoc.*, Case No.: 11-10312, 2012 LEXIS 4755 (E.D. Mich. Jan 17, 2012) (Mot. SJ, RE 73-13, PG ID # 1949-1958), wherein the court noted that the plaintiff could not claim a common law "tenancy by the years," "tenancy at will," or "tenancy by sufferance"—each of which requires either "consent on the

24

part of the property owner" or the owner's "tacit[] accept[ance] or passive[] acquiesc[ence] to possession of property by the tenant." *Id*. at 19-20. Applying the *Mills* and *Martorana* analysis to the facts of the case at bar, there can be no question that there is no tenancy relationship between Montgomery and CMI. CMI never consented, tacitly, passively, or otherwise, to Montgomery's alleged occupancy of the Subject Property. As such, Montgomery's claims under the Anti-Lockout Statute fail as a matter of law and dismissal was proper.

Montgomery's claims under MCL §600.2920 are somewhat unclear. The statute is mentioned in the jurisdictional and venue allegations of the Complaint. (Complaint RE 1-2, PG ID # 25). The Complaint recites the entire statute on Page 10. (Complaint RE 1-2, PG ID # 27). Lastly, the Complaint states that all of the named Defendants "conspired to force the Plaintiff from the property 24261 Evergreen Road Southfield MI in violation of MCL 600.2920..." (Complaint RE 1-2, PG ID # 30). MCL §600.2920 provides that "a civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention, subject to the following conditions..." In this case, CMI has neither taken nor detained any of Montgomery's personal property and he failed to show otherwise. There are no facts in the Complaint in support of this allegation and nothing has been produced by Montgomery in discovery that would support

25

this allegation. Again, the reason for that is because CMI was not involved in the Alleged Occurrences and did not remove or detain any of Montgomery's personal property (Mot. SJ, RE 73-5, PG ID # 1833-1836). As such, the claim against CMI was properly dismissed.

According to Montgomery's Complaint, Kramer-Triad Management Group sent notice to Montgomery that his car was illegally parked (Complaint RE 1-2, PG ID # 29). The Complaint also states that police Officer Rivera informed Montgomery that Michael Kellum authorized the towing of the car.[3] (Complaint RE 1-2, PG ID # 31). Regarding the alleged entry into the Subject Property, Montgomery's Complaint states that a notice was left at the Subject Property by GTJ stating the Subject Property had been winterized on March 8, 2010. (Complaint RE 1-2, PG ID # 30). Montgomery's Complaint further states that he discovered the alleged entry on March 12, 2010, left the Subject Property for a period of time, then returned to the Subject Property, at which time GTJ was at the Subject Property, restoring the water and unlocking the door. (Complaint RE 1-2, PG ID # 31).

None of these above-mentioned allegations show how CMI was allegedly involved in either the towing of the car or the alleged entry into the Subject

---

[3] Further, it appears from the facts alleged in the Complaint that Montgomery has already secured the return of the car, therefore making a replevin claim for the car a moot issue.

Property.  There are no allegations in the Complaint that attempt to show any agency relationship between CMI, Kramer- Triad Management Group, Michael Kellum, and/or GTJ.  Montgomery would have to show that Kramer-Triad Management Group, Michael Kellum, and GTJ were actual or ostensible agents of CMI in order to establish vicarious liability between CMI and these other entities/persons.  *See Alar v Mercy Memorial Hosp.*, 208 Mich App 518, 528; 529 NW2d 318 (1995).  An actual agency relationship requires "a manifestation by the principal that the agent may act on his account."  *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992).  In this case, CMI is not the principal of Kramer-Triad Management Group, Michael Kellum, or GTJ, as it had no relationship whatsoever with any of these entities/persons.  Montgomery does not plead any facts which would tend to show an agency relationship and that is because no relationship at all existed.  As indicated, CMI's independent contractor was Safeguard Properties, not GTJ.  Nor did CMI have a relationship with the condominium association's management group, or a person who appears to be a board member of the condominium association, Michael Kellum.  Montgomery did not produce any facts or evidence which tended to show how CMI was involved in the Alleged Occurrences.  Montgomery did not produce any facts or evidence showing an agency relationship between CMI, Kramer-Triad Management Group, Michael Kellum, or GTJ.  That is because CMI was not involved in the Alleged

27

Occurrences and because no relationship, via agency or otherwise, exits between CMI and these other entities/persons as to the Subject Property. Therefore, Montgomery's claims for replevin against CMI were properly dismissed.

Regarding Montgomery's claims for removal of $6,000,000.00 worth of personal items, it should be noted that Montgomery did not provide any evidence, through discovery or otherwise, showing proof of the personal items' existence. He did not provide any receipts showing purchase of the items, he did not provide photos of the items, etc...Additionally, his claims are barred by judicial estoppel. Montgomery filed for bankruptcy in October, 2008, listing $600.00 in personal property and listing "300 Riverfront Dr., Apt. 15-H, Detroit, MI 48226" as his homestead and primary residence. (Mot. SJ RE 73-14, PG ID # 1960-1963). Montgomery then filed amended schedules on January 26, 2010, just days before the alleged occurrences on March 8, 2010. (Mot. SJ RE 73-15, PG ID # 1965-1966). The amended schedules reaffirm the $600.00 in personal property that was claimed in the October, 2008 filing and also reaffirms that "300 Riverfront Dr., Apt. 15-H" is his homestead. (Mot. SJ RE 73-15, PG ID # 1965-1066). Montgomery never amended his schedules to list the action in the lower court.

The bankruptcy code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). Moreover, "the disclosure

28

obligations of consumer debtors are at the very core of the bankruptcy process, and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). Also, a legal claim or cause of action is an asset that must be listed under §521(1). *Eubanks v CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). The duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action. *In re Coastal Plains*, 179 F.3d 197 (5th Cir. 1999). The integrity of our bankruptcy system "depends on a full and honest disclosure by debtors of all of their assets." *Id.* at 208.

The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *New Hampshire v Maine*, 532 U.S. 742, 749; 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). The Supreme Court has described judicial estoppel as "an equitable doctrine invoked by the court at its discretion." *Id.* at 750. The purpose of judicial estoppel is to "preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship. *Browning v Levy*, 283 F.3d 761, 776 (6th Cir. 2002). The United States Court of Appeals for the Sixth Circuit set forth the following criteria for applying the doctrine of judicial estoppel in a bankruptcy-specific context. In order to support a finding of judicial estoppel, a court must find that: (1) the

29

plaintiff assumed a position that was contrary to the one she asserted under oath in

the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position

either as a preliminary matter or as part of a final disposition, and (3) the plaintiff's

omission did not result from mistake or inadvertence. *White v Wyndham Vacation*

*Ownership, Inc.*, 617 F.3d 472, 2010 U.S. App. LEXIS 16988 (6th Cir. 2010).

Further, "[l]eniency has not been the watchword that characterizes the Sixth

Circuit's treatment of judicial estoppel claims in the bankruptcy context. *Riddle v*

*Chase Home Fin.*, 2010 U.S. Dist. LEXIS 91247 (E.D. Mich. Sept. 2, 2010).

In this case, Montgomery's position that on or about March 8, 2010, he owned

over $6,000,000.00 in personal property is clearly inconsistent with his earlier

position that he owned only $600.00 in personal property on January 26, 2010. It

is unclear from the bankruptcy case whether or not the bankruptcy court adopted

Montgomery's prior position that he owned $600.00 in personal property,

however, there is no indication that the bankruptcy court rejected the assertion.

Lastly, there is no evidence that the prior inconsistent position was the result of

mistake or inadvertence. Assumedly, one would know if one owned $600.00 and

then days later claimed to own over $6,000,000.00 in personal property; there can

be no mistake or inadvertence regarding that. Simply put, it would be patently

unjust and unfair for Montgomery to be allowed to plead pauper-status to one court

and millionaire-status to another court; this appears to be the very definition of "cynical gamesmanship."

Moreover, Montgomery failed to amend his schedules to list this action, even though his bankruptcy was not dismissed until September 9, 2010, approximately 6 months after this case was filed. In the bankruptcy case, Montgomery filed a voluntary petition to dismiss his case on April 3, 2010. (Mot. SJ, RE 73-16, PG ID # 1968-1971). Again, Montgomery never disclosed this action to the bankruptcy trustee. Instead, Montgomery simply advised the bankruptcy court that he "realized that filling [sic] a Chapter 7 Bankruptcy petition was erroneous...Debtor intends to pursue other means of handling his debts." (Mot. SJ, RE 73-16, PG ID # 1968-1971). The bankruptcy court dismissed the case. By failing to advise the bankruptcy trustee of this action, "the plaintiff might well be usurping the right of a bankruptcy trustee to bring causes of action belonging to the bankruptcy estate." See *Waldshmidt v Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). The same facts and logic apply to this case. Montgomery failed to amend his schedules and did not disclose this action to the bankruptcy trustee. Judicial estoppel applies and the action was properly dismissed.

In addition to being barred by judicial estoppel, Montgomery should also be estopped from asserting his claims regarding his personal property due to information listed on his income tax returns. According to Montgomery's 2009

31

and 2010 tax returns, his taxable income was $3,654.00, and $0.00, respectively. (Mot. SJ RE 73-17, PG ID # 1973-1974). Where the record taken as a whole could not lead a rational trier of fact to find for the respondent, a motion for summary judgment should be granted. *Street v J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The trial court has some discretion to determine whether the respondent's claim is "implausible." *Id.* Based on the income listed in the 2009 and 2010 tax returns, the lower court had the discretion to determine that Montgomery's claims that he acquired over $6,000,000.00 in personal property in 2009 and 2010 are implausible.

Montgomery's claims for emotional distress were also properly dismissed. Montgomery alleges that his claims for emotional distress are "authorized" under MCL § 600.2918 (Complaint RE 1-2, PG ID # 19). However, nothing in MCL § 600.2918 allows for a claim of emotional distress. Montgomery has neither pleaded nor shown facts in support of a claim for either intentional infliction of emotional distress or negligent infliction of emotional distress. When asked for records from health care providers in support of his claim for emotional distress, Montgomery merely answered: "ok, I will provide." (Mot. SJ RE 73-9, PG ID # 1886). Montgomery did not provide any documents from any health care providers. When asked for the names and contact information of health care providers that treated Montgomery for his alleged emotional distress, Montgomery

32

simply stated "Henry Ford Health Care." (Mot. SJ, RE 73-9, PG ID # 1875). In sum, Montgomery has not shown any facts in support of his claim for emotional distress. He has not provided any statute or other law that entitles him to the relief he seeks. He has not provided any discovery responses in support of his claim. Therefore, Montgomery's request for damages due to emotional distress should be dismissed.

To the extent Montgomery's Complaint seeks to recover under a theory of intentional infliction of emotional distress, Montgomery has failed to establish the type of outrageous conduct required to support such damages. Indeed, when highlighting the cause of action of intentional infliction of emotional distress, the Michigan Court of Appeals has explained that "[t]he conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hayley v Allstate Ins. Co.*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (internal citations omitted). "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery" and a jury question is created only when "reasonable individuals may differ..." *Id.*

The threshold for establishing extreme and outrageous conduct is high, and "[a] defendant is not liable for mere insults, indignities, threats, annoyances, petty

33

oppressions, or other trivialities." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (internal citations omitted). In this case, Plaintiff's Complaint does not show any acts whatsoever on the part of CMI, let alone acts that rise to the level of intentional infliction of emotional distress. Therefore, this claim should be dismissed.

Montgomery's Complaint cites to MCL § 445.902 and MCL § 445.922 in support of his argument that CMI violated the Michigan Consumer Protection Act ("MCPA"), MCL §445.901 *et seq*. (Complaint RE 1-2, PG ID # 20, 30). MCL § 445.902 provides the definitions as used under the Act. MCL § 445.911 provides that "a person may bring an action to do either or both of the following: (a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3. (b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3." However, the MCPA has no applicability to the case at bar.

As noted by the lower court in its October 27, 2011 Opinion and Order (Order Deny Mot. Amend., RE 50, PG ID # 1239-1256), the MCPA is designed to prohibit businesses from engaging in unsavory practices with regard to goods and services that are offered to Michigan consumers. It applies to "trade" or "commerce" which means "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the

34

advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a

service or property, tangible or intangible, real, personal, or mixed, or any other

article, or a business opportunity." MCL § 445.902. In this case, CMI did not

provide goods, property, or services primarily for personal, family, or household

purposes. Also, again as noted by the lower court, Montgomery has "neither

identified the provisions or § 445.902 that he believes have been breached nor

provided a plausible set of allegations from which the Court could assess his

entitlement to relief." (Order Deny Mot. Amend., RE 50, PG ID # 1252).

Therefore, Montgomery's claims under the MCPA were properly dismissed.

Montgomery's Complaint states that the Defendants "violated the Michigan

Penal Code 750.110a by evicting the Plaintiff from the Premises without due

process of law." (Complaint RE 1-2, PG ID # 22). As noted by the lower court in

its October 27, 2011 Opinion and Order:

> Montgomery provides no factual allegations which would
> plausibly suggest that the Defendants broke and entered his
> dwelling and committed a felony or a misdemeanor while
> inside (or intended to do so), as required by §750.110a. More
> importantly, even if he had succeeded in making such a
> showing, Montgomery has proffered no legal authority to
> establish that a violation of this criminal statute gives rise to a
> private right of action or other form of civil liability between
> private litigants. (Order Deny Mot. Amend., RE 50, PG ID #
> 1251).

35

Montgomery has not shown any facts in support of his allegations under §
750.110a against CMI. Moreover, Montgomery has not provided any legal
authority showing there is a private right of action or any other form of civil
liability between private litigants for an alleged violation of this statute. As such,
this claim was properly dismissed.

Montgomery's Complaint states that he seeks to quiet title under MCL §
600.2935 apparently by enforcement of a construction lien under MCL § 570.1118
(Complaint RE 1-2, PG ID # 32). Whether or not Montgomery is attempting to
quiet title in the Subject Property is largely irrelevant as to CMI as CMI does not
claim an interest in the Subject Property. The Mortgage by which CMI held a lien-
hold interest was extinguished by the foreclosure sale. Freddie Mac was the
successful purchaser at sale and the redemption period expired vesting title in
Freddie Mac. MCL §600.3236. Moreover, the lower court examined
Montgomery's construction lien as it pertained to the West Bloomfield property
and concluded that the construction lien was "legally invalid." (Order Deny Mot.
Amend., RE 50, PG ID # 1246-1247). The same logic and legal analysis applied to
the Subject Property. Montgomery did not provide any evidence that he had a
written contract with Rudolph as required by MCL § 570.1114 or that he was
licensed to perform any of the improvements as required by MCL § 570.1114 and

MCL § 339.2412.   Therefore, Montgomery's attempt to quiet title through

enforcement of his construction lien was properly dismissed.

Respectfully submitted,
TROTT & TROTT, P.C.

/s/ Rana Razzaque
Rana Razzaque (P67627)
TROTT & TROTT, P.C.
Attorneys for  CitiMortgage
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI  48334
(248) 723-5072
rrazzaque@trottlaw.com

Dated:  January 21, 2014

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(c)</u>

1.     This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because:

☒     this brief contains 8,966 words, excluding the parts of the brief exempted be FRAP 32(a)(7)(B)(iii); or

☐     this brief used a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(B)(iii).

2.     This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements exempted by FRAP 32(a)(6) because:

☒     this brief has been prepared in a proportionally spaced typeface using, Microsoft Word, In Times New Roman 14-point type style; or

☐     this brief has been prepared in a monospaced typeface using Times New Roman with 14 characters per inch

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DESCRIPTION OF ITEM | DOCKET # | PAGE ID |
|---|---|---|
| Removal | 1 | 1-4 |
| Complaint | 1-2 | 18-59, 19, 22, 26, 25, 27, 29,30, 31, 32, 59 |
| Motion to Amend | 27 | 588-627 |
| CMI Response to Motion to Amend | 32 | 754-772 |
| Order Denying Motion to Amend | 50 | 1239-1256, 1246-1247, 1251, 1252 |
| Motion for Video Deposition | 53 | 1259-1323 |
| Order Granting Video Deposition | 57 | 1339 |
| Motion for Reconsideration Video | 58 | 1340-1345 |
| Order Denying Motion for Recon | 67 | 1376-1377 |
| Motion to Dismiss | 69 | 1381-1413 |
| Motion to Strike | 71 | 1571-1579 |
| Motion for Summary Judgment | 73 | 176-1796 |
| Mortgage | 73-2 | 1799-1820 |
| Assignment | 73-3 | 1822 |
| Sheriff's Deed | 73-4 | 1824-1831 |
| Affidavit-CitiMortgage | 73-5 | 1833-1836 |
| Merger Documents | 73-6 | 1838-1842 |
| Affidavit of Safeguard | 73-7 | 1844-1846 |
| Inspection Report | 73-8 | 1848-1855 |
| Responses to Disc. Request | 73-9 | 1878-1885 |
| Dep. Transcript | 73-10 | 1896, 1897 |
| *Mills v County of Lapeer* | 73-12 | 1923-1947 |
| *Martorana v Federal Nat'l Mtg.* | 73-13 | 1949-1958 |
| Bankruptcy Schedules | 73-14 | 1960-1963 |
| Bankruptcy Schedules | 73-15 | 1965-1966 |
| Bankruptcy Voluntary Dismissal | 73-16 | 1968-1971 |
| Tax Returns | 73-17 | 1973-1974 |
| Errata | 79 | 2146-2147 |
| Order Granting Motion for SJ | 113 | 2516-2532 |
| Objections to R&R | 114 | 2533-2591 |
| Order Adopting R&R | 117 | 2616-2621 |
| Notice of Appeal | 132 | 2651-2652 |

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the court's electronic filing system which will send notification of such filing to the following:

Jason Robert Abel, Esq.                    Amy Sitner Applin, Esq.
jabel@honigman.com                         aapplin@zkac.com

I further certify that on January 21, 2014, I caused to be served, a copy of *Brief on Appeal CitiMortgage, Inc. and this Proof of Service* by placing same in an envelope with sufficient postage thereon, and depositing same in the United States mail in Farmington Hills, MI to:

D. Montgomery
PO Box 441074
Detroit, MI 48244

I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge, and belief.

/s/ Theresa Prisby
Theresa Prisby
Legal Assistant
Trott & Trott, P.C.